IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HARRISON TUTTLE, ERIC HIRSCH and RHODE ISLAND HOMELESS ADVOCACY PROJECT<br>v.<br><br>DANIEL J. MCKEE, Governor of the State of Rhode Island, in his official capacity, MATTHEW SUTTON, Chief of the Rhode Island Capitol Police, in his official capacity, MARCO SCHIAPPA, Acting Director of the Division of Capital Asset Management and Maintenance, in his official capacity, COLONEL DARNELL S. WEAVER, Director of the Rhode Island Department of Public Safety, in his official capacity, and Defendants John Does 1-10, individually | Case No. 25-cv- |

**COMPLAINT**

1. Plaintiffs file the within Complaint seeking declaratory and injunctive relief against Defendants named in their official capacity and seeking damages against Defendants John Does 1-10 who, while serving as members of the Rhode Island State Police or the Rhode Island Capital Police, prevented the Plaintiffs from fully exercising their rights of freedom of expression and to petition the government.

2. On January 14, 2025, Defendant Daniel J. McKee, Governor of the State of Rhode Island, delivered a "State of the State" address at the Rhode Island State House. The Plaintiffs, their members, and others, planned to assemble in the State House Rotunda one hour before the Governor's speech was to begin to present what they called the "People's State of the State" address. Upon arriving at the State House, Plaintiffs and others assembling for this purpose were informed that the Governor had instructed State Police and Capitol Police to

1

prevent them from accessing the Rotunda and the upper floors of the State House. At the same time, other persons present at the State House were permitted free access to the same areas.

3. Plaintiffs seek a declaration and corresponding injunctive relief from this Court that Defendants have violated Plaintiffs' constitutionally protected rights under the First Amendment to the United States Constitution, as applicable to the state under the Fourteenth Amendment, when Defendants acted to prevent the Plaintiffs from using the Rotunda at the State House to engage in peaceful protest activities before, during, and/or after the Governor delivered his State of the State address on January 14, 2025, and otherwise acted to prevent the Plaintiffs from effectively exercising their rights of free speech and to petition the government before, during, and after the State of the State address on January 14, 2025. Plaintiffs further seek damages against the individual defendants for their actions.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988 as this case arises under the Constitution and laws of the United States, including the First and Fourteenth Amendments.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred within the District of Rhode Island and the Defendants either reside or conduct official business in this district.

## Parties

6. Plaintiff Harrison Tuttle ("Tuttle") is a resident of Cranston, Rhode Island and the former President of Black Lives Matter Rhode Island PAC ("BLM-RI").

7. Plaintiff Eric Hirsch ("Hirsch") is a resident of North Scituate, Rhode Island, and Executive Director of Plaintiff Rhode Island Homeless Advocacy Project.

8. Plaintiff Rhode Island Homeless Advocacy Project ("RIHAP") is a non-profit corporation organized pursuant to the laws of the State of Rhode Island advocating for the rights and interests of Rhode Island's homeless population. Among the issues of importance to the members of RIHAP are access to public transportation and affordable housing. RIHAP brings this action in its representative capacity on behalf of its members, and references to RIHAP as "plaintiff" hereinafter refer to its members.

9. Defendant Daniel J. McKee ("McKee") is the Governor of the State of Rhode Island.

10. Defendant Matthew Sutton ("Sutton") is the Chief of the Rhode Island Capitol Police.

11. Defendant Marco Schiappa ("Schiappa") is the Acting Director of the Division of Capital Asset Management and Maintenance ("DCAMM"). DCAMM is responsible for the use and maintenance of the State House and grounds, including but not limited to providing permitting and reserving the grounds for events.

12. Defendant Colonel Darnell S. Weaver ("Weaver") is the Director of the Rhode Island Department of Public Safety.

13. Each of the above-named Defendants is sued in his official capacity and they are referred to collectively as "the official Defendants."

14. Defendants John Does 1-10 are individuals who are or were members of the Rhode Island Capitol Police and/or Rhode Island State Police on January 14, 2025, whose identity is not presently known to the Plaintiffs but whose identity can be determined by discovery. Each Defendant Doe is alleged to have directly interfered with one or more of the Plaintiffs'

exercise of their First Amendment rights on January 14, 2025. Each is sued individually and they are referred to collectively as "the individual Defendants."

15. With respect to the actions complained of herein, each Defendant acted under color of law within the meaning of 42 U.S.C. §1983.

## Statement of Facts

16. Before January 14, 2025, Plaintiffs Tuttle, Hirsch, and members of RIHAP and BLM-RI, as well as other members of the public, made plans to assemble in the Rhode Island State House Rotunda on January 14, 2025, to gather before the Governor's delivery of the State of the State address. Plaintiffs planned to assemble around 5 pm and to make speeches starting an hour before the Governor's scheduled address, calling their event "the People's State of the State" (hereinafter referred to as "the rally").

17. Specifically, the rally was intended to highlight inaction and deficiencies by the McKee administration to address the housing crisis and homelessness in Rhode Island.

18. The Rotunda is located between the first and second floors of the Rhode Island State House, in its center, surrounded by massive columns and stairs leading down to the first floor and up to the second floor. The chambers of the House of Representatives and of the Senate are located on the second floor on opposite ends of the State House.

19. The State of the State address was scheduled to be delivered in the Chamber of the House of Representatives of the Rhode Island General Assembly on January 14, 2025, at 7:00 pm.

20. The Plaintiffs' plan to rally at the State House and assemble in the Rotunda prior to the Governor's address was publicly announced and known.

    a. Plaintiff Tuttle announced the rally on X, posted on January 13, 2025 at 10:20 am. A screenshot of the post is attached hereto as Exhibit 1 and incorporated herein.

    b. Plaintiff Tuttle announced the rally by blast email to persons interested in the organizational activities of BLM-RI, including Plaintiff Hirsch, on January 10, 2025. A copy of the email is attached hereto as Exhibit 2 and incorporated herein.

    c. Plaintiff Hirsch announced the rally by blast email to persons interested in the organizational activities of RIHAP, including Plaintiff Tuttle, on January 13, 2025. A copy of the email is attached hereto as Exhibit 3 and incorporated herein.

    d. Plaintiff Tuttle appeared on the Dan Yorke Show podcast to discuss "The People's State of the State", described as "the event…that will take place at the Rhode Island statehouse ahead of this evening's State of the State address from Governor Dan McKee". The podcast commenced at 4:15 pm on January 14, 2025. The podcast can be accessed at https://podcasts.apple.com/us/podcast/the-peoples-state-of-the-state-blm-ri-pacs-harrison-tuttle/id1371495333?i=1000683989026

21. Plaintiffs planned to conduct their rally in the Rotunda with the goal of maximizing the visibility and reach of their message to the media and persons who would likely be passing through or near the Rotunda in order to attend the Governor's address.

22. Upon information and belief, the Governor and his staff became aware of the planned rally on or shortly before January 14, 2025.

23. Upon information and belief, the Governor and his staff, with the assistance of members of the Capitol and/or State Police and/or DCAMM, undertook plans to prevent or mute Plaintiffs' rally.

24. The Rotunda has long served as a traditional public forum for expressive activities, protests, rallies, and public gatherings. Its central location within the State House, serving as a thoroughfare for most activity, including passage to legislative chambers, and its high

visibility to government officials and the public, make it a uniquely important venue for the exercise of expressive activity.

25. The State House, and particularly the Rotunda, is a public space that is frequently a location for rallies, protests and speeches. See, e.g., *Reilly v. Noel*, 384 F. Supp. 741, 747 (D.R.I. 1974) (finding "there can be no doubt that the State House rotunda is [a public] forum").

26. The State House, exclusive of the chambers and private offices, has historically and traditionally been open to the public prior to and during the Governor's annual delivery of the State of the State speech.

27. Upon information and belief, the official Defendants and/or the staffs under their direction and authorization, directed the Capitol and/or State Police to close the Rotunda before, during and after the State of the State address specifically to prevent the Plaintiffs' planned event from occurring in a part of the State House that was accessible and visible to the public and press.

28. Upon information and belief, in furtherance of their plans to prevent or mute Plaintiffs' rally, the official Defendants:

   a. posted signs and barriers indicating the space was reserved from 4:30 p.m. to 10:00 p.m. on January 14, 2025.  Attached hereto as Exhibit 4 and incorporated herein are photographs published in the Boston *Globe* on January 15, 2025 displaying the signs and barriers as they appeared on January 14, 2025.

   b. at or about 4:39 pm on January 14, 2025, invoked DCAMM policies to formally "reserve" the space for an "event" from 4:30 pm to 10 pm on January 14, 2025. Attached hereto as Exhibit 5 and incorporated herein is a screenshot of the calendar

6

entry of the reservation, reported by WPRI news as obtained from the Defendants in response to an Access to Public Records Request.

29. Despite the stated reservation, the Rotunda remained vacant and unused from 5:00 pm or earlier, and throughout the Governor's speech, except for the presence of law enforcement officers and to allow some individuals, but not the Plaintiffs or their members, to pass through the Rotunda.

30. The State of the State address was delivered by the Governor in the House Chamber.

31. No official or private "event" or activity took place in the Rotunda during the reserved period.

32. Upon information and belief, the Governor and his staff never intended to use the Rotunda for any purpose on January 14, 2025, other than to silence any expressive activity, and particularly that of the Plaintiffs, their members and others who came to the State House to participate in the rally.

33. Around 5:00 pm, members of the Capitol Police and/or the State Police (hereinafter collectively "the Police") informed the Plaintiffs and others who were gathering for the rally that the Rotunda had been reserved for the Governor's speech. Police stood in place to prevent those who wished to participate in the rally from entering the Rotunda.

34. Police informed the Plaintiffs and others who had gathered for the rally that they would also be prohibited from using the stairs or the elevators to access the second and third floors of the State House. While this was happening, the Police allowed other individuals unconnected to the rally to freely access the stairs and elevators from which Plaintiffs and rally participants were barred.

35. Police, including John Does 1-10, informed Plaintiff Tuttle that the Governor's office had specifically instructed them to prevent Tuttle from entering the Rotunda that evening.

36. Police, including John Does 1-10, physically escorted and removed Plaintiff Tuttle from the second floor under threat of prosecution.

37. Police also prevented one independent reporter, Pat Ford, from ascending the State House stairs to report on the State of the State Address, while allowing other mainstream media reporters from other news outlets free access to the second and third floors.

38. Plaintiffs, their members and other members of the public who were there to participate in the rally were directed by Police, including Defendants John Doe 1-10, under the threat of arrest and prosecution, to relocate their assembly to a more remote location away from the Rotunda.

39. As a result, Plaintiffs, their members and other members of the public who were there to participate in the rally were forced to assemble in an area of the State House called "the Bell Room" in order to proceed inside with the rally.

40. The Bell Room is located in a recessed area in the back of the State House of the first floor. It is located away from the building's main entrance and elevators, and in a less visible and less accessible location than the Rotunda.

41. In the Bell Room, Plaintiffs and their members, including unhoused individuals, tenants, and low-income community members, conducted their rally, calling on the Governor to declare a public health emergency and expand shelter capacity.

42. The relocation of Plaintiffs' rally from the Rotunda to the Bell Room undermined Plaintiffs' ability to convey their message as intended within the State House, thereby impeding their ability to communicate effectively and diminishing the impact of their expressive activities.

43. At the conclusion of the speaking portions of their rally, Plaintiffs and their members and other participants left the Bell Room and began to march peacefully around the first floor of the State House, chanting in support of housing as a human right and to protest their exclusion from the Rotunda.

44. Police, including John Does 1-10, ordered the rally participants, including the Plaintiffs, to stop marching and chanting. Participants, including Plaintiff Tuttle, were threatened by John Does 1-10 with arrest and disorderly conduct charges if they did not stop marching and chanting, and were directed to return to the Bell Room. Police blocked the participants in a corridor on the first floor, out of sight of the press.

45. The rally at all times was conducted peacefully and ended peacefully.

46. Plaintiffs have no adequate remedy at law.

## COUNT I (against all official Defendants)
## Violation of the First and Fourteenth Amendments and 42 USC §1983

47. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

48. The First Amendment to the United States Constitution guarantees the rights to freedom of speech, freedom of assembly, and to petition the government for a redress of grievances. These rights are fundamental and apply with particular force in traditional public forums, such as the Rhode Island State House Rotunda, which has been judicially recognized as an appropriate venue for the exercise of First Amendment rights.

49. Governor McKee's attempt to "reserve" the Rotunda before, during, and after his State of the State Address was a transparent attempt to restrict speech that might appear to be critical of his administration, and as such was an unconstitutional content-based and viewpoint-based restriction on the Plaintiffs' rights to freedom of speech and assembly and to petition

9

for a redress of grievances.

50. In addition to being content-based and viewpoint-based, the restriction was not narrowly tailored to serve a significant government interest.

51. Defendants, acting under color of state law, imposed restrictions on Plaintiffs and their members and other members of the public by reserving and roping off the Rotunda, deploying law enforcement to block access, and forcing protesters, including Plaintiffs and their members, to a less visible and less accessible location for their rally.

52. The deployment of materials to cordon off the Rotunda area and of the use of the State and Capitol Police, including Defendants John Does 1-10 to restrict access and to threaten arrest for peaceful protest, constituted a substantial interference with Plaintiffs' rights to assemble, speak, and petition the government.

53. These actions substantially burdened the Plaintiffs' right to assemble and engage in expressive activity at a time and place of heightened public significance.

54. The restrictions were not content-neutral or viewpoint-neutral, as they were imposed in direct response to the planned rally.

55. The Rotunda remained vacant and unused during the reserved period, evidencing that the reservation served as a pretext to suppress dissenting speech and assembly.

56. The creation of a buffer zone around the Rotunda, enforced by law enforcement officers, constituted a prior restraint on speech and assembly. The buffer zone was not justified by any legitimate governmental interest, as the Rotunda was not used for any official event during the reserved period and the restrictions were targeted at the planned protest.

57. The Defendants created an illegal buffer zone around the Chamber where the State of the State address was being given.

58. Defendants further limited the movement of Plaintiffs and rally participants, impeding their ability to communicate effectively and diminishing the impact of their expressive activities.

59. These actions constitute impermissible prior restraints and unreasonable time, place, and manner restrictions that violate the First Amendment.

60. Without assuming any burden of proof on these issues, the restrictions placed on the Plaintiffs and their members by the Defendants were not content- or viewpoint-neutral, as they were imposed in direct response to the known purpose of the planned rally and were not applied to other groups or events.

61. The Defendants' selective enforcement of restrictions against the Plaintiffs further chilled the exercise of First Amendment rights and limited public accessibility to Plaintiffs' speech.

62. The United States Supreme Court has held that restrictions on speech in public forums must be narrowly tailored to serve a significant governmental interest and must leave open ample alternative channels for communication.

63. The restrictions imposed by Defendants failed to meet these requirements, as they were overbroad, not narrowly tailored, and did not provide meaningful alternatives for expressive activity.

64. The resulting relocation of the protest to the Bell Room, coupled with limitations on movement, rendered the alternative forum inadequate for the intended expressive activity, further violating Plaintiffs' rights.

65. As a result of these actions, Plaintiffs are entitled to declaratory relief under 28 U.S.C. §§ 2201–2202 that the restrictions imposed on January 14, 2025 violated their First and Fourteenth Amendment rights and 42 U.S.C. §1983.

66. As a result of these actions, Plaintiffs seek injunctive relief to prevent Defendants from restricting access to the Rotunda, imposing similar restrictions on the exercise of First Amendment rights in the future, including the use of arbitrary and excessive buffer zones, selective enforcement, and threats of prosecution for peaceful protest and assembly.

**COUNT II (against official Defendants)**
**Violation of the Equal Protection Clause of the**
**Fourteenth Amendment and 42 USC §1983**

67. Plaintiffs repeat and incorporate all prior allegations of fact as if fully set forth here.

68. The Rotunda is regularly used by government and private groups for speeches, demonstrations, rallies and other public gatherings.

69. On January 14, 2025, other people unaffiliated with the Plaintiffs were permitted access to the Rotunda, even as the Plaintiffs were excluded.

70. Upon information and belief, exclusion of the Plaintiffs from the Rotunda and the restriction of their access to other public locations on the second floor of the State House was based on the expected content of their speech and their anticipated criticism of Governor McKee.

71. This content-based and viewpoint-based restriction on use of the Rotunda and the second floor of the State House violates the Equal Protection Clause of the Constitution.

**COUNT III (against John Does 1-10 individually)**
**Violation of the First and Fourteenth Amendments and 42 USC §1983**

72. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

73. Defendants John Does 1-10, as law enforcement officers, threatened Plaintiffs, their members and other protesters with arrest and prosecution for engaging in peaceful, constitutionally protected activity. Plaintiff Tuttle was specifically banned from the

Rotunda by name, physically escorted from the second floor, and threatened with arrest if he did not comply.

74. The threat of prosecution for exercising First Amendment rights constitutes an unlawful chilling effect, deterring Plaintiffs and others from engaging in protected speech and assembly. Such threats are actionable under 42 U.S.C. § 1983 and violate the First and Fourteenth Amendments.

75. As a direct and proximate result of the actions of Defendants John Does 1-10, Plaintiffs were deprived of their rights to peacefully protest, assemble, and petition their government.

76. Plaintiffs are entitled to recover compensatory or nominal damages against Defendants John Does 1-10 for the interference with their rights protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

WHEREFORE, Plaintiffs request that the Court:

1. Enter a declaratory judgment pursuant to 28 U.S.C. §§2201, 2202 holding that the Defendants' conduct in restricting the Plaintiffs' rights to free speech and freedom of assembly and to petition the government violated their rights under the First Amendment and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

2. Enter a permanent injunction prohibiting the Governor, Director of the Department of Administration, Director of DCAMM and the Chiefs of the Capitol Police and the State Police, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them, from restricting public access to the State House Rotunda, including for peaceful assembly and expression, except pursuant to established time, place and manner requirements regulating actual and bona fide competing uses of the Rotunda;

3. Award Plaintiffs compensatory or nominal damages against John Does 1-10; and

4.  Award the plaintiffs their costs, including attorneys' fees; and

5.  Award such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

HARRISON TUTTLE, ERIC HIRSCH and RHODE ISLAND HOMELESS ADVOCACY PROJECT

By their attorneys,

/s/ Lynette Labinger
Lynette Labinger, Esq. (No. 1645)
128 Dorrance Street, Box 710
Providence, RI 02903
401.465.9565
LL@labingerlaw.com

/s/ Sonja L. Deyoe
Sonja L. Deyoe (No. 6301)
395 Smith Street
Providence, RI 02908
(401) 864-5877
SLD@the-straight-shooter.com


Cooperating Attorneys, American Civil Liberties Union Foundation Of Rhode Island
